KYLE A. CASAZZA, SBN 254061
kcasazza@proskauer.com
JENNIFER L. ROCHE, SBN 254538
jroche@proskauer.com
SHAWN S. LEDINGHAM, JR., SBN 275268
sledingham@proskauer.com
CHRISTINA H. KROLL, SBN 323026
ckroll@proskauer.com
SETH H. VICTOR, SBN 329341
svictor@proskauer.com
**PROSKAUER ROSE LLP**
2029 Century Park E. Suite 2400
Los Angeles, CA 90067
Tel:  (310) 557-2900
Fax: (310) 557-2193

*Attorneys for Plaintiff Rose Cohen*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE COHEN, individually, | **Case No.:** |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. VIOLATION OF ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706 |
| KENNETH J. BRAITHWAITE, Secretary of the Navy, | |
| Defendant. | **DEMAND FOR EQUITABLE RELIEF** |

## SUMMARY OF THE ACTION

1. Rose Cohen was a rising star in the United States Navy before a vicious sexual attack by a fellow service member changed the course of her life. Almost immediately, Ms. Cohen went from being a successful young sailor with unlimited potential, to struggling with the emotional and physical harm she suffered as a result of being raped on base after reporting to duty. In the late 1980s and early 1990s, the Navy was ill-equipped to assist women with military sexual trauma, and rather than provide Ms. Cohen with an environment conducive to healing, they discharged her with an "Other than Honorable" status. Ms. Cohen seeks to have that honor restored, with a correction to her discharge status.

2. Ms. Cohen served at Naval Station Norfolk from 1989 through 1992.

3. In November 1989, Ms. Cohen was serving as a yeoman, responsible for sending messages at any hour she was called to work, day or night. On the night of November 26, 1989, Ms. Cohen was called back to base after hours to send a message. After doing so, on her way back to her car to return home, Ms. Cohen was sexually assaulted by a higher-ranking service member. The attacker slammed Ms. Cohen's head and shoulders against the concrete parking lot as she screamed, and as she tried to escape, he proceeded to tear off her clothes and violently rape her. The assault left her needing reconstruction of her right rotator cuff.

4. At the time, Ms. Cohen was afraid to report the assault. In addition to fearing retaliation by her attacker, she lived in fear of a Navy culture in which sexual assault victims were actively discouraged from reporting military sexual assaults.

5. Because she had no realistic option of reporting the incident, Ms. Cohen began to self-medicate to deal with the physical and emotional pain of her military sexual trauma. Following two positive tests for cocaine, she was discharged with an Other than Honorable designation in 1992.

6. Ms. Cohen has been clean and sober since 2003. After years of sobriety, she completed a drug and alcohol counseling certification at Long Beach City

1  College, earned a Human Services Associate Degree from Long Beach City College,
2  and graduated from Cal State Long Beach with a B.A. in Human Development.
3  From 2017 through 2018, Ms. Cohen helped other veterans dealing with substance
4  abuse as a volunteer at the Substance Abuse Treatment Clinic at the Tibor Rubin
5  VA Medical Center in Long Beach, in connection with her pursuit of a state
6  certification as an alcohol and drug counselor.
7      7. On April 17, 2017, Ms. Cohen applied to the Board for Correction of
8  Naval Records ("BCNR") to upgrade her discharge to a General Discharge (Under
9  Honorable Conditions). Her application recounted the sexual assault she
10 experienced, and it explained that she did not report the assault because of her fear
11 of retaliation. Instead, she self-medicated to cope with the emotional experience of
12 being assaulted. In her application, she asserted that the sexual trauma she
13 experienced was the root cause of the drug use that resulted in her discharge. She
14 specifically requested the upgrade so she could seek permanent employment at the
15 VA Medical Center, which she has been denied due to her current status.
16     8. The BCNR wrongfully denied Ms. Cohen's application for correction of
17 her military records. The BCNR, in reaching its arbitrary and capricious decision,
18 failed to adequately read Ms. Cohen's application.
19     9. As a part of the process of reviewing her application, the BCNR requested
20 a Medical Advisory Opinion. That opinion rightly concluded that Ms. Cohen had
21 presented "sufficient evidence to conclude that she was the victim of [military sexual
22 trauma] and that her misconduct could have been mitigated from suffering from that
23 MST."
24     10. However, the opening paragraph of the Medical Advisory Opinion, on
25 which the BCNR relied, errantly asserted that Ms. Cohen "is alleging she suffered
26 from unrecognized Post-Traumatic Stress Disorder (PTSD) symptoms during her
27 time of service." Ms. Cohen has never alleged she suffered from PTSD, and there
28 is no mention of PTSD in her application. Continuing from this flawed premise, the

Medical Advisory Opinion concluded "that there is insufficient evidence to support Ms. Cohen's contention that she suffered from PTSD . . . ."

11. This error carried forward to the BCNR's decision. In addition to citing guidance applicable only to PTSD, the decision repeats the allegation Ms. Cohen never made and the Medical Advisory Opinion's PTSD conclusion, demonstrating that Ms. Cohen's application was not "fully and carefully considered by the Board," as the BCNR claimed.

12. In reaching its arbitrary and capricious decision, the BCNR also failed to apply mandatory Department of Defense guidance. Under that guidance, the BCNR was required to consider Ms. Cohen's own testimony as evidence of the assault and resulting behavior, and was required to balance the severity of her conduct with her rehabilitation, honesty, and desire to assist other veterans. The BCNR did neither.

13. In denying Ms. Cohen's application, the BCNR disregarded Ms. Cohen's written statement and questioned why she had "failed to provide supporting documentation" regarding her shoulder injury and drug use. The applicable guidance explicitly states that "[t]he veteran's testimony alone, oral or written, may establish the existence of a condition or experience." The BCNR also cited the Navy's supposed zero tolerance policy for drug use as justification for denying the application. But, the applicable guidance provides that "substance-seeking behavior and efforts to self-medicate symptoms of a mental health condition may warrant consideration."

14. The BCNR failed to even mention other applicable (and mandatory) guidance issued nearly a month before its denial, let alone evaluate the mitigating factors it required the BCNR to consider.

15. In the years since her discharge, Ms. Cohen has completed a rehabilitation program and been sober for seventeen years. She has committed to working with veterans who suffer from similar substance abuse issues. Despite guidance mandating that the BCNR consider these facts, the BCNR did not do so.

16. The BCNR's arbitrary and capricious decision results in Ms. Cohen's continued inability to receive necessary medical treatment from the VA. It also prevents her from pursuing meaningful employment serving veterans who, like Ms. Cohen, suffer from substance abuse and addiction.

17. In this action, Ms. Cohen appeals the BCNR's denial of Ms. Cohen's Application and seeks equitable relief in the form of an order directing Defendant to upgrade her characterization of service to General Discharge (Under Honorable Conditions), or other such relief that the Court deems appropriate.

## PARTIES

18. Plaintiff in this action, Rose Cohen, is a veteran of the United States Navy. She is a citizen of the United States of America and currently resides in Los Angeles, California.

19. Defendant Kenneth J. Braithwaite, Secretary of the Navy, is sued in his official capacity. Defendant is empowered to act through the BCNR to change any military record of a former member of the Navy when necessary to correct an error or to remove an injustice pursuant to 10 U.S.C. § 1552.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter presented by this Complaint pursuant to 28 U.S.C. § 1331. The action arises under the Administrative Procedures Act ("APA"), 5 U.S.C §§ 701-706, which waives sovereign immunity for review of federal agency actions such as decisions made by the BCNR. The Court also has subject-matter jurisdiction under 28 U.S.C. § 1361, as this is an action to compel an officer or employee of the United States to perform a duty owed to the plaintiff.

21. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(e)(1), as Plaintiff resides in the Central District of California.

## REGULATORY BACKGROUND

22. Upon discharge from the U.S. Armed Forces, military personnel receive a certificate that characterizes their service as Honorable, General Discharge (Under Honorable Conditions), Other than Honorable, Bad Conduct, or Dishonorable. 32 C.F.R. §§ 724.109, 724.111.

23. The discharge characterization affects each veteran's eligibility for benefits and support services administered by the U.S. Department of Veterans Affairs (VA), *see, e.g.*, 38 U.S.C. § 101(2); 38 C.F.R. § 3.12, as well as benefits and services provided by state laws.

24. Employers will often request to see a former service member's discharge in the course of the job application process.

25. On September 3, 2014, then-Secretary of Defense Chuck Hagel directed all records-correction boards to give "special consideration" to PTSD diagnoses by the VA and "liberal consideration" to diagnoses of PTSD by civilian providers when adjudicating discharge upgrade applications submitted by veterans who have been diagnosed with PTSD.[1] Hagel Supplemental Guidance, ¶ 1. The Hagel Memo requires the BCNR to "immediate[ly] implement[]" its guidance. Hagel Memo, ¶ 5.

26. On August 25, 2017, then-Acting Under Secretary of Defense for Personnel and Readiness A.M. Kurta clarified that the same "special consideration" that then-Secretary of Defense Hagel mandated will also extend to discharge upgrade petitions presenting questions related to mental health conditions, sexual assault, or sexual harassment. Kurta Memo,[2] ¶¶ 1-2. The Kurta Memo requires the BCNR to "immediate[ly] implement[]" its guidance. Kurta Memo, ¶ 4.

---

[1] Chuck Hagel, Memo and Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder (Sept. 3, 2014). ("Hagel Memo").

[2] A.M. Kurta, Memo and Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions;

27. The Kurta Memo views discharge relief petitions as presenting four questions: (1) whether the veteran had an experience that may excuse or mitigate the discharge; (2) whether that experience occurred during military service; (3) whether that experience actually excuses or mitigates the discharge; and (4) whether the experience outweighs the discharge. Kurta Clarifying Guidance, ¶ 2. The Memo provides that "[t]he veteran's testimony alone, oral or written, may establish the existence of a condition or experience, that the condition or experience existed during or was aggravated by military service, and that the condition or experience excuses or mitigates the discharge." *Id.* ¶ 7.

28. When evaluating a veteran's testimony, the BCNR must give "liberal consideration" to veterans petitioning for "discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD; TBI; sexual assault; or sexual harassment." Kurta Clarifying Guidance, ¶ 3. The BCNR is also "not required to find that a crime of sexual assault or an incident of sexual harassment occurred in order to grant liberal consideration to a veteran that the experience happened during military service." *Id.* ¶ 12. "[S]ubstance-seeking behavior and efforts to self-medicate symptoms of a mental health condition may warrant consideration." *Id.* ¶ 19.

29. On July 25, 2018, then-Under Secretary of Defense for Personnel and Readiness, Robert Wilkie, issued guidance regarding "determining whether relief is warranted on the basis of equity, injustice, or clemency." Wilkie Guidance,[3] ¶ 1. The guidance notes that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which

---

Traumatic Brain Injury; Sexual Assault; or Sexual Harassment (Aug. 25, 2017). ("Kurta Memo").

[3] Robert L. Wilkie, Memo and Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations (July 25, 2018). ("Wilkie Memo").

individuals have paid for their misdeeds." *Id.* ¶ 6(a). It goes on to provide that "[r]equests for relief based in whole or in part on a mental health condition, including . . . sexual assault or sexual harassment experience, should be considered for relief on equitable, injustice, or clemency grounds . . . ." *Id.* ¶ 6(h). The memo provides eighteen factors that a reviewing board should consider when determining whether relief is warranted on the basis of inequity, injustice, or clemency grounds. *Id.* ¶ 7. The memo also "sets clear standards" that it "trust[s the BCNR] to apply" and directs the BCNR to "give appropriate consideration to every application for relief." Wilkie Memo, ¶ 4.

30. Both the Kurta Memo and Wilkie Memo constitute mandatory guidance that is binding on the BCNR. The Kurta Memo states that military department secretaries "shall direct immediate implementation of this guidance" and report on compliance with the guidance. Kurta Memo, ¶ 4. The Wilkie Memo similarly states that "[w]e trust our boards to apply this guidance" and military department secretaries are instructed to ensure that board members "are familiar with and appropriately trained" on the guidance. Wilkie Memo, ¶ 4. And in other litigation, the Navy has acknowledged that the BCNR's failure to apply the Kurta Memo "is a legal error," and represented to a federal court that the Wilkie Memo (which had not yet issued at the time of the challenged decision) would be applied on remand of that challenged decision.

31. As an agency action, BCNR decisions must abide by the APA. *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence."); *see* 5 U.S.C § 706. Reviewing courts can set aside agency actions that are arbitrary and capricious and not "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). Agencies must "present an adequate basis and explanation" for their decision, *id.* at 34, and "[i]t is the duty of a reviewing court

to ensure that an agency follows its own procedural rules," *Kelley v. Calio*, 831 F.2d 190, 191-92 (9th Cir. 1987); *see also Morant v. McPherson*, 2020 WL 1974331, at *3 (D. Conn April 24, 2020) (granting Secretary of the Navy's motion for voluntary remand pursuant to the BCNR's legal error in failing to apply the Kurta Memo). "[F]inding that an agency's position was substantially justified when the agency's position was based on violations of . . . the agency's own regulations, constitutes an abuse of discretion." *Mendenhall v. NTSB*, 92 F.3d 871, 874 (9th Cir. 1996).

32. It is well-settled that decisions of boards for the correction of military records can be reviewed judicially for arbitrariness and capriciousness. *Neal v. Sec'y of the Navy & Commandant of Marine Corps,* 639 F.2d 1029, 1037 (3d Cir. 1981) ("[W]e have both the power and the duty to review the actions of . . . the BCNR to ascertain whether there is any basis for plaintiff's claim that those agencies acted in an arbitrary and capricious manner."); *see also Dibble v. Fenimore*, 545 F.3d 208, 215-16 (2d Cir. 2008); *Morant*, 2020 WL 1974331 at *2.

## FACTUAL ALLEGATIONS

### *Ms. Cohen's Military Service*

33. Plaintiff Rose Cohen enlisted in the United States Navy on March 6, 1989, at the age of 24. This was a time of great tension in the Middle East, resulting in increased U.S. military activity and culminating in the Gulf War of 1990 and 1991.

34. Moving from Puerto Rico to Orlando, Florida to attend basic training, Ms. Cohen experienced culture shock when she arrived. She nevertheless rose to the challenge, not only succeeding but excelling, and was the first in her class.

35. Ms. Cohen was assigned to work as a yeoman at Naval Station Norfolk, in Norfolk, Virginia. As part of her duties in 1989, she was given a pager and remained available to be called back to base if necessary to send classified messages around the world. She was a trusted and successful sailor, consistently receiving positive evaluations for her work.

36. Ms. Cohen received two medals as part of her service: a Meritorious Unit Commendation and a National Defense Service Medal.

### Ms. Cohen's Sexual Assault and Aftermath

37. On the night of Sunday, November 26, 1989, Ms. Cohen was paged back to base to send a message. Although her shift for the day had ended, her yeoman duties meant that she was on call if necessary. She returned to base, sent the message as required, and then left to go back to her car.

38. On her way back to her car, she was ambushed and attacked by another member of the Navy near the parking lot of where she worked. The attacker was wearing a Navy uniform indicating the rank of Petty Officer, Third Class, a rank higher than Ms. Cohen's. He wrestled Ms. Cohen to the ground, overpowering her with his superior size and strength. He repeatedly slammed her head and shoulders against the concrete of the parking lot as she screamed and tried to escape. He proceeded to tear off her clothes and violently rape her.

39. Ms. Cohen did not report the incident to anyone within the military due to her fear of reprisal. In the 1980s, there was no training on sexual assault in the military, and it was taboo to report such incidents. Ms. Cohen's commanding officers were all male, and she did not believe they would support her if she reported the crime.

40. Further, as a Puerto Rican woman who had not been on base for much time, Ms. Cohen was afraid that reporting the sexual assault would elicit contempt and punishment. Adding to Ms. Cohen's reluctance, Ms. Cohen personally knew of instances where colleagues treated women who reported sexual assault and sexual harassment poorly.

41. Ms. Cohen's reluctance to report her assault was part of a pattern of the underreporting of MST. While Ms. Cohen was assaulted over 30 years ago, even recent research sponsored by the VA concluded that "MST is often underreported in all age groups" and that "[w]omen often do not disclose MST the first time they

are asked." Tristan Horrom, *Past military sexual trauma common in older women Veterans*, VA Research Currents (Sept. 26, 2019), available at https://www.research.va.gov/currents/0919-Past-military-sexual-trauma-common-in-older-women-Veterans.cfm.

42. A 2014 study also found that "52% of active-component women perceived that they experienced professional or social retaliation after reporting a sexual assault." Andrew R. Morral, et al., *Sexual Assault and Sexual Harassment in the U.S. Military* 28 (2014).

43. The existence of the Kurta Memo itself provides support for Ms. Cohen's hesitation. The Department of Defense acknowledged that veterans who reported sexual assault in the past may have been a "victim of injustice." Kurta Clarifying Guidance, ¶ 26(j). Ms. Cohen is one of those veterans. She recognized that she would likely be mistreated if she reported the incident, so she chose not to.

44. Following the sexual assault, Ms. Cohen felt alone and hopeless. She was terrified to tell her colleagues about the rape, and did not have friends she could turn to. Instead, Ms. Cohen self-medicated with cocaine. As a result, Ms. Cohen tested positive for cocaine in a urinalysis. She was given an Article 15, more commonly known as a non-judicial punishment. She was restricted to the barracks for 30 days, her rank was reduced from E3 to E2, and her pay was reduced.

45. While she was restricted to the barracks, Ms. Cohen felt depressed and even more alone. Tarnished by the Article 15 and her reduction in rank, and clouded by emotional and physical pain resulting from her sexual assault, Ms. Cohen requested psychiatric help for depression and suicidal ideation. Because Ms. Cohen was restricted to the barracks, she was not permitted to go to the clinic alone and had to be escorted. The fear of both professional and social repercussions for reporting military sexual trauma loomed over her and she was uncomfortable discussing the root of her issues with the doctor while the escort was present.

46. The evaluating psychiatrist nonetheless agreed that Ms. Cohen was depressed and a danger to herself. Ms. Cohen expressed interest in joining a 28-day rehabilitation program, but Navy doctors failed to provide her any follow-up treatment and did not give her any information regarding the 28-day rehabilitation program.

***Ms. Cohen's Treatment for her Shoulder Injury that Resulted from the Attack***

47. Ms. Cohen's assailant had injured her shoulder during the attack, and she sought treatment for her shoulder. The Navy doctors asked her the cause of injury, but Ms. Cohen was too embarrassed and afraid to tell them the truth.

48. Around the same time, Ms. Cohen realized that she could not get the psychiatric help she needed from the military, so she contacted a suicide hotline operated by a church in Puerto Rico. The church wanted to assist Ms. Cohen, who was suffering emotional and physical pain, and it offered to arrange and pay for corrective surgery on Ms. Cohen's shoulder at no cost to her. Ms. Cohen flew to Puerto Rico and received the surgery.

49. Upon returning to base from Puerto Rico, Ms. Cohen's commanding officers informally rebuked her for getting treatment outside of the military. Claiming that she had violated policy, Navy doctors refused to take her stitches out, which forced Ms. Cohen to return to Puerto Rico for the simple procedure.

50. Soon after, Ms. Cohen relapsed and began using cocaine again. The relapse stemmed from being denied participation in a rehabilitation program, the lack of viable solutions outside of a program, and the persistent need to self-medicate her emotional trauma and shoulder pain.

51. In 1992, Ms. Cohen tested positive for cocaine in a urinalysis conducted by the Navy. Her rank was reduced to E1, her pay was further reduced, and she was again restricted to the barracks. Commanding officers initiated paperwork to execute an involuntary discharge. Despite medical records indicating that Ms.

Cohen had agreed to receive the substance abuse treatment she was entitled to, Ms. Cohen was discharged without the treatment being made available to her.

### Ms. Cohen's Discharge

52. On June 6, 1992, Ms. Cohen was discharged with a characterization of service of Other than Honorable. Navy law enforcement personnel forcefully escorted Ms. Cohen off of base, a final humiliation.

### Ms. Cohen's Recovery

53. Following her discharge, Ms. Cohen returned to Puerto Rico, where she stayed with a friend from church. She procured temporary jobs but could not keep any for very long due to the fact that she continued to self-medicate with cocaine.

54. Then, in 2003, Ms. Cohen reached a turning point in her life: she gave birth to her first child. That same year, she enrolled in a drug rehabilitation program and has remained sober to the present day. Ms. Cohen continues to care and provide for her son, and actively participates in the drug and alcohol rehabilitation community.

55. Following completion of the program, Ms. Cohen enrolled at Long Beach Community College. Her goal was to understand why she self-medicated with cocaine and how to help other people with similar experiences. She later transferred to California State University, Long Beach and on May 20, 2016, she graduated with a Bachelor of Arts in human development and a minor in anthropology. Despite receiving volunteer opportunities at other clinics, Ms. Cohen chose to volunteer at the VA because of the kinship she felt—and continues to feel—with veterans suffering from addiction. Despite Ms. Cohen's desire to serve this community, she is barred from employment at VA hospitals due to her discharge status.

### Ms. Cohen's BCNR Appeal

56. On April 17, 2017, Ms. Cohen applied to the BCNR to upgrade her Other than Honorable discharge to a General Discharge (Under Honorable Conditions)

discharge. Her stated goal was to continue her work and certification as a drug and alcohol treatment counselor with the VA.

57. Ms. Cohen's application included a statement informing the BCNR of her assault. As part of her statement, she explained that she had suffered a shoulder injury while she was sexually assaulted. Because she was afraid of retribution, she did not report the assault. To deal with her physical and emotional pain, she self-medicated and was subsequently discharged for failing drug tests. Ms. Cohen's statement also demonstrates the hard work she has put in to move past the incident. She informed the BCNR that she has been sober since 2003, and she regularly attends "twelve-steps" meetings. She also received both an Associate's Degree and a Bachelor's Degree, and she volunteered at the VA's Substance Abuse Treatment Clinic.

58. The application also included, among other documents, a letter of support from Ret. Col. Robert C. McFetridge, a volunteer with the Veterans Legal Institute; a letter from Gail Capone, her supervisor at the Long Beach VA, stating that "[h]er knowledge of substance abuse is an excellent addition to treatment team discussions" and that she was "being encouraged to apply for Peer Support Specialist positions, here at the VA"; and two certificates of recognition for her Recovery Program Completion.

59. The BCNR also requested a Medical Advisory Opinion as part of its review of Ms. Cohen's application, which found that there was "sufficient evidence to conclude that she was the victim of a MST and that her misconduct could have been mitigated from suffering from that MST."

60. Despite all of the supporting evidence she presented and the binding nature of the Kurta and Wilkie Memos, the BCNR denied Ms. Cohen's application on August 22, 2018.

61. The BCNR did not properly read Ms. Cohen's application, as evidenced by its characterization of Ms. Cohen's application as one based on a "PTSD

diagnosis." Ms. Cohen's application does not include any mention of PTSD and instead focuses on her military sexual trauma. Nonetheless, the BCNR evaluated the application as one based on "suffering from [PSTD]." It also evaluated Ms. Cohen's application pursuant to the Hagel Memo, which applies only to veterans claiming PTSD.

62. The Advisory Opinion errantly asserts that Ms. Cohen "is alleging she suffered from unrecognized Post-Traumatic Stress Disorder (PTSD) symptoms during her time of service," and from that flawed premise concludes "that there is insufficient evidence to support Ms. Cohen's contention that she suffered from PTSD . . . ." But again, Ms. Cohen never asserted she had PTSD in her application. Exercising its discretion, the BCNR should have disregarded this aspect of the Advisory Opinion and instead focused on the Opinion's determination that Ms. Cohen did suffer from military sexual trauma. *See, e.g.*, *Roberts v. U.S.*, 741 F.3d 152, 159 n.\* (D.C. Cir. 2014) ("Although the Board is free to rely upon the reasoning of an advisory opinion, it must still provide sufficient guidance that its 'path may reasonably be discerned.'") (quoting *Bowman Trans., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)). After all, that is precisely the claim Ms. Cohen advanced in her application. That the BCNR did not recognize this demonstrates its failure to properly review and consider all aspects of the application.

63. The Board did not adequately explain the basis of its decision. The BCNR relied on Ms. Cohen's purported failure to provide "supporting documentation" and the Navy's zero tolerance policy. However, because both justifications are counter to the Kurta and Wilkie Memos, they are inadequate explanations.

64. By rejecting Ms. Cohen's statement and disregarding the correct conclusions of the Medical Advisory Opinion relating to Ms. Cohen's MST, the BCNR failed to follow the Kurta and Wilkie Memos. Ms. Cohen's statements provide evidence of her substance-seeking behavior and efforts to self-medicate, and they are the very types of evidence contemplated in the Kurta Memo. They alone

should be sufficient to "establish the existence of a condition or experience . . . [that] excuses or mitigates the discharge." And yet, Ms. Cohen's statement describing her sexual assault was insufficient for the BCNR. The Board also ignored her statement that the drug use for which she was discharged was directly related to trying to manage her emotional reaction to the sexual assault. By rejecting Ms. Cohen's application for a lack of "supporting documentation" and not properly crediting her own testimony, the BCNR failed to follow its own binding guidelines.

65. The BCNR's decision also stated that it "concurred with the [Advisory Opinion]'s statement that [Ms. Cohen]'s medical record supported a finding of depression that interfered with [her] performance of duty." However, it then rejected Ms. Cohen's claim because the Navy had a zero tolerance drug policy. This explanation is inadequate. The Kurta Memo states that "[l]iberal consideration *will* be given" to applications based on sexual assault; thus, liberal consideration is required. Kurta Clarifying Guidance, ¶ 3 (emphasis added). Ms. Cohen's application stated that her application was based on sexual assault, but the BCNR relied on the Navy's purported zero tolerance policy. A zero tolerance policy is not "liberal consideration," and the BCNR's decision failed to explain how the "liberal consideration" policy applied to Ms. Cohen's application. A decision that does not even mention the legal standard for reviewing an application cannot be an adequate explanation.

66. The BCNR also failed to address the factors presented by the Wilkie Memo as being the guidelines for when equitable relief was justified. Ms. Cohen presented evidence of her rehabilitation, recovery, and positive community service, which should weigh in favor of her application being granted. The BCNR, though, did not give more than a passing mention to Ms. Cohen's significant efforts, and it certainly did not discuss them in the context of whether equitable relief was warranted. As a result, its explanation of Ms. Cohen's denial was inadequate.

### Ms. Cohen, Presently

67. Ms. Cohen had two surgeries in 2018 on her rotator cuff as a result of the injury incurred during the rape. The injury continues to cause her pain on a daily basis. Ms. Cohen lacks the ability to get treatment from the VA due to her OTH characterization of service.

68. Currently, Ms. Cohen is a certified drug and alcohol counselor. She volunteered at the VA, where she helped patients dealing with drug and alcohol addictions. Her goal is to be able to become fully employed by the VA as a drug and alcohol counselor. Currently, she is barred from both benefits and employment by the VA due to her OTH from the Navy.

## COUNT I: VIOLATION OF ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706)

69. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

70. Federal agencies, including the BCNR and the Department of Defense, must abide by the APA and are supposed to follow their own rules. *Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016) ("Where the petitioner challenges the agency's action as inconsistent with the agency's own policies, we examine whether the agency has actually departed from its policy and, if so, whether the agency has offered a reasoned explanation for such departure."); *see also Texas v. EPA*, 829 F.3d 405, 430 (5th Cir. 2016) ("[I]t is elementary that an agency must adhere to its own rules and regulations.") (internal citation omitted).

71. BCNR decisions cannot be arbitrary and capricious and must provide an adequate basis and explanation, and they must follow the Kurta and Wilkie Memos. The BCNR's denial of Ms. Cohen's application violated both the APA and its internal requirements.

72. The BCNR's decision to deny Ms. Cohen's discharge upgrade petition was arbitrary and capricious because it demonstrated a failure to carefully read and consider Ms. Cohen's petition, and because it failed to adequately explain the basis

of the decision. The BCNR incorrectly relied too heavily on the Advisory Opinion's errant focus on PTSD and did not properly evaluate its conclusion that she suffered from military sexual trauma.

73. The BCNR incorrectly characterized Ms. Cohen's petition as being based on a PTSD diagnosis rather than depression secondary to military sexual trauma. As a result, evaluating Ms. Cohen's application pursuant to the Hagel Memo—a memo that makes no mention of sexual trauma, assault, or harassment—was an error.

74. The BCNR also did not adequately explain the basis of its decision, as required by the Administrative Procedure Act. Its reliance on the lack of documents and a zero tolerance policy violated the Kurta and Wilkie Memos and are thus inadequate.

75. There is no indication that the BCNR applied any part of the Kurta or Wilkie Memos to Ms. Cohen's application. The Kurta Memo establishes that "[t]he veteran's testimony alone... may establish the existence of a condition or experience, that the condition or experience existed during or was aggravated by military service, and that the condition or experience excuses or mitigates the discharge." However, the BCNR ignored Ms. Cohen's own statements about her sexual assault and the drug use that resulted.

76. Further, the BCNR's strict adherence to the Navy's zero tolerance policy violates the Kurta Memo, as it would prohibit the consideration of any discharge upgrade case involving drug abuse. Because the Kurta Memo allows for "substance abuse" to be evidence of sexual assault, the BCNR's reliance on the zero tolerance policy was arbitrary and capricious.

77. The BCNR made no mention of the Wilkie Memo in its decision and failed to reference any of the equitable factors the Board must consider. Ms. Cohen's application included descriptions of her rehabilitation and positive work in the community; the BCNR should have weighed these positive elements against the

severity of Ms. Cohen's misconduct. However, the BCNR focused solely on the negative elements of Ms. Cohen's discharge, ignoring the Wilkie Memo's instruction to consider any the mitigating factors.

78. Based on these facts, it is evident that the BCNR's decision to deny Ms. Cohen's application was arbitrary and capricious because it failed to address all of Ms. Cohen's non-frivolous claims and failed to follow the Kurta and Wilkie Memos' guidelines for liberal consideration and equitable relief.

79. By failing and refusing to adequately review Ms. Cohen's discharge upgrade request, the BCNR bars her from VA benefits that she deserves, continues to stigmatize Ms. Cohen, and interferes with her employment prospects including potentially as a drug and alcohol counselor with the VA. The BCNR's denial of Ms. Cohen's discharge upgrade request was arbitrary, capricious, not in accordance with the law, an abuse of discretion, and unsupported by substantial evidence.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Ms. Cohen, respectfully requests that the Court grant the following relief:

A. Equitable relief in the form of an order directing Defendant to upgrade Plaintiff's characterization of service to General Discharge (Under Honorable Conditions);

B. Any other and further relief that the Court deems is appropriate.


DATED: August 4, 2020

/s/ Kyle A. Casazza
Kyle A. Casazza
Jennifer L. Roche
Shawn S. Ledingham, Jr.
Christina H. Kroll
Seth H. Victor
PROSKAUER ROSE LLP

*Attorneys for Plaintiff Rose Cohen*